New York Life Ins. Co. *v.* Robertson, State Revenue Agent.*

(In Banc. Jan. 19, 1925. Suggestion of Error Overruled March 23, 1925.)

[103 So. 222. No. 23918.]

1. Taxation. *Dividends apportioned by insurer to and applied by policy holders towards payment of premiums collected held part of gross amount of premium receipts and taxable.*

   Under section 1, chapter 203, Laws of 1916, section 31, chapter 104, Laws of 1920, imposing an annual tax on the gross amount of premium receipts of insurance companies doing business in this state; where the policies of a company provide that "dividends" which consist of a policy holder's share of the surplus remaining after deducting all expenses from the premiums collected might be applied toward payment of premiums, such "dividends" when applied by the policy holders toward payment of premiums collected should be included in the gross amount of premium receipts on which the tax due by the company is to be computed.

On Suggestion of Error.

2. Taxation. *Statute held to preserve right to enforce collection of taxes accruing under or by virtue of any statute repealed or affected by act.*

   Laws 1924, chapter 132, section 29, subd. 2, *held* fully to preserve right to enforce collection of any taxes which accrued under or by virtue of any statute repealed or in any wise affected (Laws 1916, chapter 203, section 1, as amended by Laws 1920, chapter 104, section 31; Laws 1912, chapter 101, as amended by Laws 1914, chapter 116) by the act, and especially by section 4, and section 11, subd. 10, thereof.

---

*Headnotes 1. Taxation, 37 Cyc., p. 841; 2. Taxation, 37 Cyc., p. 1191.

Appeal from circuit court of Hinds county.
Hon. W. H. Potter, Judge.

Suit by Stokes V. Robertson, as State Revenue Agent, against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed by divided court.

*Wells, Stevens & Jones,* for appellants as *amici curiae.*

The concrete question presented for decision is what constitutes ''gross premiums received'' as contemplated by the quoted provisions of our statute. The tax payable by appellant was not the two and one-half per cent tax imposed by chapter 203, Laws of 1916, and was not the two per cent tax imposed by section 31, chapter 104, Laws of 1920. It was the minimum tax of one and three-fourths per centum ''upon the gross premiums received by it upon the business done within the state during the year.''

It was the contention of appellee in the trial court that the gross stipulated premiums, as shown on the face of all policies upon which premiums were collected in any year involved in this suit, constituted the ''gross premiums received,'' while appellant company contends that the term ''gross premiums received'' means exactly what the term implies, premiums actually received.

It is manifest that the purpose of the law in question is only to tax insurance companies on a basis of premiums received and the term ''gross premiums received'' means all premiums actually received, and thus a standard of measure is provided by which the tax may be actually computed.

I. *Statutes imposing taxes are to be strictly construed as against the state, and liberally in favor of the taxpayer.* 37 Cyc. 768; *U. S.* v. *Wigglesworth,* 2 Story, 369 Fed. Cas. No. 16,690; *American Net and Twine Co.* v. *Worthington,* 141 U. S. 468, 35 Fed. 821, 12 Sup. Ct. Rep. 55; *Spreckles Sugar Ref. Co.* v. *McClain,* 192 U. S. 397, 48 L. Ed. 496, 24 Sup. Ct. Rep. 376.

II. *Dividends applied in abatement of premiums should not be computed or taxed under the phrase "gross premiums received."* Insurance Company v. Henry, 110 Miss. 402, 70 So. 452; *Mutual Benefit Life Insurance Company* v. *Commonwealth* (Kentucky), 107 S. W. 802; *Mutual Benefit Life Insurance Company* v. *Herold,* 198 Fed. 199, affirmed; 201 Fed. 918; *certiorari* denied; 231 U. S. 755; *New York Life Insurance Co.* v. *Anderson,* 263 Fed. 527, *certiorari* denied, May 2, 1921; also see cases of *Eaton* v. *Conn., etc., Co.,* 223 Fed. 1022; *Northwestern Mutual Life Insurance Co.* v. *Fink,* 248 Fed. 568, affirmed, 267 Fed. 968; *Commonwealth* v. *Pennsylvania Mutual Life Insurance Co.* 97 Atl. 677 (1916) ; *State ex rel. Brewster, Attorney General,* v. *Wilson,* 172 Pac. 41, L. R. A. 1918 D, 955; *German Alliance Ins. Co.* v. *Van Cleave,* 191 Ill. 410, 61 N. E. 94; *State, ex rel. National Life Insurance Company,* v. *Hyde, Superintendent* (Mo.), 247 S. W. 396; *Mutual Benefit Life Insurance Co.* v. *Richardson* (1923), ·219 Pac. 1003;

The case of *Penn. Mutual Life Insurance Co.* v. *Henry,* 100 Miss. 402, 70 So. 452, is relied on by the appellee. The case, we submit, is not an authority against the contentions of appellant, or any of the facts which we press upon the court. Two questions were presented to the court ʹ in that case, but the first, and the question which is now presented in the case at bar, is not decided.

Our own court in the Simmons case, and other cases, has declared that double taxation is to be avoided, and that no statute will be construed to manifest a legislative purpose to tax twice the same thing. Dividends declared by a mutual company, and used by the policy-holders from year to year in abatement of premiums would be doubly taxed if the contentions of appellee are sanctioned by this court. Inequalities would result as between mutuals and stock companies. In fact the privileges and immunities guaranteed to every citizen by article 4, section 2 of the Federal Constitution would be infringed. These returns are in no sense income, and

should not be regarded as premiums, and therefore enter into a computation of the tax now under review. Both equity and the positive provisions of the statute are with the appellant in this case, and the court should unhesitatingly so declare.

*A. H. Longino, R. B. Ricketts,* and *Green, Green & Potter,* for appellants.

I. *All prior existing laws imposing upon insurance companies excise taxes measured by the premium receipts of such companies on their Mississippi business were repealed, and without saving cause, by the enactment of chapter 132, Laws of 1924.*

There will be a repeal by implication when two statutes are so repugnant and inconsistent that they cannot stand together, giving each a fair construction. *Commercial Bank* v. *Chambers,* 8 S. & M. 9. Every affirmative statute is a repeal by implication of a precedent affirmative statute to the extent that it is contrary to such former statute.

Where a later statute covers the whole subject-matter of earlier statutes and embraces new provisions and plainly shows that it was intended, not only as a substitute for the earlier statute, but to cover the whole subject and to prescribe the only rules in respect thereto, it repeals all former statutes on the subject. *Ascher* v. *Moyse,* 101 Miss. 36, 25 R. C. L. (Statutes, page 915, sec. 167); *Knox, Attorney-General,* v. *Wyoming Manufacturing Co.,* 138 Miss. 249, 103 So. 11.

As in the case of the statutes under examination in the case of *Knox* v. *Wyoming, etc,* there is in our case a new statute clearly covering the same subject-matter dealt with by the statutes under which are supposed to have arisen the claims for which the revenue agent has sued. This court has announced again the rule which we contend for as correct. We submit that our case comes clearly within the rule so laid down and that there has

been a complete repeal, without any saving clause, of the statutes under which suit has been brought against the appellant.

Let us now apply the rule to the instant case. First, it is clear that chapter 132, Laws of 1924, is intended to cover the same subject-matter as the laws upon which this suit is founded. Both the Act of 1924 and the laws imposing the taxes sought to be collected in the present suit are of one class—*excise laws.* The taxes imposed by them are clearly of the same kind—*excise taxes.*

For a general definition of the term *excise tax* and a statement as to what taxes are included within the term we refer the court to 29 R. C. L. 236 (Taxation, sec. 209); *Henry, Ins. Commr.,* v. *Alexander,* 94 So. 846 at 848; *Hattiesburg Gro. Co.* v. *Robertson,* 88 So. 4.

It may be contended that the tax imposed by the Law of 1924 is merely an additional tax. If so, it is an additional tax of exactly the same kind as the former taxes and one that is measured upon or by exactly the same thing. One act may say that the tax is to be measured by ''gross premiums received'' and the other act may say that the tax is to be measured by or based on ''income'' but that can make no difference. If the premiums received by the appellant on its Mississippi business are incomes now under the new law, they constituted income under the former laws. The name is changed but the thing itself remains the same. To attempt to treat the acts as concurrent would involve the court in upholding a case of double taxation. This court has clearly held in the case of *Panola Co.* v. *Carrier,* 92 Miss. 148, that double taxation will not be allowed. To hold that the former laws are still in force—laws that imposed taxes of the same kind (excise) and measured by the same sort of income (gross premium receipts or income)—would be nothing else than an approval of double taxation.

*The Act of 1924 contains no saving clause as to pending suits or existing liabilities.* The result is that the pend-

ing suit must fail. There is, again, no reason for going abroad for authority. This court has made the rule absolutely clear. *Crow* v. *Cartledge*, 99 Miss. 281 (283).

There is another reason why this court will be slow to hold that the Act of 1922 and the Act of 1924 impose concurrent taxes. This court has held that laws imposing privilege taxes approximate an abridgment of the liberty of the citizen guaranteed to him by the Fourteenth Amendment to the Constitution of the United States and should receive the strictest construction. *Wilby* v. *State*, 93 Miss. 767, 47 Co. 465. See also: *State* v. *Simmons*, 70 Miss. 485, 12 So. 477; As a case supporting our contentions with reference to the implied repeal of former statutes by the Law of 1924 and at the same time enforcing the proper rule of construction to be applied to laws imposing taxes or penalties, see: *United States* v. *Yuginovitch*, 65 U. S. (Law Ed.) 1043.

II. We again respectfully submit that the appellant comes within the protection of the rule announced and enforced in the cases of *Adams* v. *Standard Oil Co.*, 97 Miss. 879; and *So. Ry.* v. *Green*, 216 U. S. 400. This is an excise tax and is to be strictly construed in favor of the taxpayer. *Johnson* v. *Oil & Refining Co.*, 108 Miss. 416; *Ex parte Taylor*, 58 Miss. 478.

It is a tax upon premium receipts, or premiums received. The receipt of premiums conditions the obligation to pay the tax. These contentions are supported by the following decisions: *Commonwealth* v. *Penn. Mutual*, 1 Dauphin Co. Rep. 233; *Mutual Co.* v. *Commonwealth*, 128 Ky. 174; *Commonwealth* v. *Penn. Mutual*, Court of Common Pleas (Pa.); *State* v. *Hibernia, etc.*, 38 La. Annual 467; *People* v. *Miller*, 177 N. Y. 518; *Ins. Co.* v. *Herold*, 198 Fed. 201; S. C., 201 Fed. 918; *Certiorari* denied, 231 Fed. 753; *re Continental Casualty Co.*, 179 N. W. (10) 186; *State* v. *Tomlinson*, 124 N. E. (Ohio), 221; *State* v. *Fleming*, 70 Neb. 523; *State* v. *Wilson*, 102 Kan.

752; *State* v. *Continental Ins. Co.* (Ind.), 116 N. E. 929; *Commissioner* v. *Penn. Mutual,* 252 Penn. 516.

*Reporter's Note.* No other briefs available to reporter.

PER CURIAM:—This is a suit in which the appellee, the state revenue agent, alleges that the appellant for several years has failed to pay the full amount of the tax due by it on the gross amount of its premium receipts and in which he seeks to collect the amount of the tax thereon which he alleges the appellant failed to pay. The tax sought to be collected is that imposed by section 1, chapter 203, Laws of 1916, which now appears as paragraph 3 of section 31, chapter 104, Laws of 1920, as follows:

"All life insurance companies or associations shall pay annually a tax of two per centum on the gross amount of premium receipts in this state, less premiums paid to reinsuring companies authorized to do business in Mississippi and less matured endowments and cash dividends paid under policy contracts in this state during the year; provided, however, that the tax assessed on any such life insurance company shall not be less than an amount equal to one and three-fourths per centum of the gross premiums received by it upon the business done within the state during the said year."

The case was tried by the court below without a jury on an agreed statement of facts, and from a judgment in the revenue agent's favor the appellant has brought the case to this court.

It appears from the agreed statement of facts that the appellant is a nonresident mutual life insurance company without capital stock, and "whatever profits or accretions arise from its business, from any cause, are for the common use and benefit of the policyholders who, in fact, constitute the company."

Its policies are written under "the level premium system" plan by which the maximum annual payment which any policy holder can be called on to pay during the life

of the policy is stipulated therein. The calculation of the company's premium rates for life insurance involves:

(a)   The adoption of a table of mortality, showing the proportionate death rate of each age of life.

(b)   The adoption of an assumed rate of interest, such as the company may reasonably expect to realize upon its invested assets during the lifetime of the policy.

These two factors determine what is technically known as the net or mathematical premiums which are the sums sufficient and necessary to pay all outstanding policies, as they become claims against the company; provided the deaths should occur exactly in accordance with the table of mortality and the rate of interest earned on the investments of such premiums should be equal to the assumed interest rate.

To the said "mathematical premiums" there is added a sum which is technically called a "loading," which may be needed for the purpose of meeting the expense incident to carrying on the business, as well as to cover any unforeseen contingencies that might arise, such for instance as an abnormal death rate which might be brought about by war, epidemic, pestilence, or any other unforeseen fatality.

The net or mathematical premiums, so increased by "loading" as aforesaid, constitute the premium rates stipulated in the policies of insurance.

The premium rates, when so computed, are in the experience of life insurance companies generally found to be in excess of what is actually required to carry the policy.

Such excess constitutes, in mutual companies, their estimated margins of safety and must, therefore, be liberally provided for in the "loading," since a company having no capital stock must rely solely upon premiums collected for funds with which to meet the ordinary and incidental expenses of the business, as well as the unusual contingencies which may, and probably will, have to be incurred. In addition to providing an adequate

expense fund, premiums must be sufficiently large to in-sure also the company's ability to pay death claims, beyond doubt or peradventure, when they accrue. Though the insurance policies may run for any stipulated num-ber of years, the premiums, as fixed, cannot be increased, but remain level after the issuance of the policy.

In computing premium rates the insurance companies allow for a greater death rate than that which probably will be experienced. The assumed rate of interest also, on the companies' investments, is calculated at a rate below that which they expect to realize. In their calcu-lations for expenses and unforeseen contingencies they provided for a greater amount than is ordinarily and usually needed.

Mutual companies have the above three named mar-gins of safety, and each assumption of the amount needed is usually in excess of what is actually required, and when such collections result in excess or redundant premiums the same is apportioned to its policies and paid back to the owners thereof.

According to the rule and practice of the New York Life Insurance Company, at the end of each year what-ever remains of excess premium receipts which it has collected—over and above the expenses and disburse-ments—is ascertained, and there is then set aside out of said excess such amount as is required for the increase in policy reserves and other liabilities; then whatever bal-ance of excess remains is apportioned and paid back by the company to the policyholders, under the usual desig-nation of "dividends."

Such provision is contained in all of the policies of the defendant company and is as follows:

"*Participation in Surplus—Dividends.*—The propor tion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the second insurance year, and on each anniversary there-after, such surplus as shall have been apportioned by the company to this policy shall at the option of the in-

sured be either: (a) Paid in cash; or (b) applied toward payment of premiums; or (c) applied to purchase a participating paid-up addition to the sum insured; or (d) left to accumulate at such rate of interest as the company may declare on funds so held, but at a rate never less than three per cent. compounded and credited annually, and withdrawn in cash on any anniversary or payable at the maturity of the policy to the person entitled to its proceeds.''

For the first year of each policy the appellant company collects the full maximum premium stipulated for in the policy, and such collections form a part of its taxable in come for that year and are included in its reports, respectively, as part of its income on which taxes are due the state, and that taxes were paid on such premiums for each of the years embraced in this suit.

The dividends are not part of the premium receipts of the year in which they are distributed, but are applications of previously accumulated surplus premium collections; that is to say, by way of illustration, the dividends applied to payment of premiums for policy years beginning in the year 1923 are made up of surplus funds accumulated in policy years beginning in 1922 or prior years.

The appellant for each of the years embraced in this suit reported to the insurance commissioner and paid to him the tax due on the actual amount of money collected by it from its policyholders in settlement of premiums due by them on policies issued by it, but did not include therein as a part of its ''premium receipts'' the dividends apportioned by it to its policyholders under the provision of its policies therefor hereinbefore set out and which were applied by direction of its policyholders ''toward the payment of premiums'' due by them.

The contention of the revenue agent is that the ''dividends'' apportioned by the appellant to and applied by its policyholders ''toward the payment of premiums'' should be regarded as a part of and included in the gross

amount of its premium receipts. If this contention is correct, then the appellant admits it has paid for each of the years here in question, after giving it the benefit of all of the deductions allowed by the statute, less than one and three-fourths per cent. of its gross premium receipts, the minimum tax thereon allowed by the statute, and the judgment of the court below should be affirmed.

Judges ANDERSON, COOK, and ETHRIDGE are of the opinion that these dividends should be regarded as a part of the company's gross premium receipts; Judges MC-GOWEN, HOLDEN, and SMITH, are of the opinion that they should not be so regarded, but that the tax to be collected from the company should be computed only on the money actually received by it in payment of premiums.

*Affirmed.*

## ON SUGGESTION OF ERROR.

COOK, J., delivered the opinion of the court.

The tax which the state revenue agent is seeking to collect by this suit is that imposed upon the gross amount of the premium receipts of insurance companies by section 1, chapter 203, Laws of 1916, which now appears as paragraph 3, of section 31, chapter 104, Laws of 1920. On suggestion of error, for the first time, appellant presents the contention that "all prior existing laws imposing upon insurance companies excise taxes measured by the premium receipts of such companies on their Mississippi business, were repealed, and without saving clause, by the enactment of chapter 132 of the Laws of 1924. Chapter 132 of the Laws of 1924 is "an act levying an income tax on individuals, partnerships, corporations, associations, trusts, and estates, for the benefit of the general fund of the state of Mississippi," etc. Section 4 of this act levies a tax to be paid annually, "at the rate specified in this section, upon and with respect to the entire net income as herein defined except as hereinafter provided, from all property owned, and from

every business, trade, or occupation carried on in this state by individuals, corporations, partnerships, trusts, or estates, not residents of the state of Mississippi," while subdivision 10, section 11, of the act, provides that "in the case of life insurance companies there shall not be included in gross income such portion of any actual premium received from any individual policy holder as is paid back or credited to or treated as an abatement of premium of such policy holder within the taxable year."

The taxes which the revenue agent is seeking to collect by this suit all accrued prior to the enactment of chapter 132, Laws of 1924, but the appellant now contends that the taxes imposed by both the Act of 1924 and the laws under which the revenue agent is proceeding are excise taxes, that the tax of 1924, called an income tax, is simply the same tax with the same deductions (with one exception), that was imposed by the former statutes; that the subsequent statute covers the same subject-matter as the former statutes, and prescribes the only rules as to that subject-matter; and that, consequently, all prior laws imposing upon insurance companies. excise taxes measured by the premium receipts are, by implication, repealed by said chapter 132 of the Laws of 1924.

Without expressing or indicating any views whatever as to whether the Act of 1924 has repealed the prior laws imposing these premium taxes, but conceding for the purpose of this opinion that such is the case, still we think that the saving clause found in subsection 2, section 29, chapter 132, Laws of 1924, fully preserves the right of the revenue agent to enforce collection of these taxes which accrued prior to the enactment of the act of 1924 Among other things, this section provides that: "Nothing in this act shall affect or defeat any claim, assessment, suit, appeal, right, or cause of action for taxes due prior to the passage of this act, whether assessment, suit, appeal, or claim therefor shall have been begun before the passage of this act, or shall thereafter be begun; and the laws amended or repealed are expressly con-

tinued in full force, effect, and operation for the purpose of the assessment and collection of any back taxes, and for the imposition of any penalties, forfeitures, or claims for the failure to comply therewith.''

· We do not think there is any merit in the contention of appellant that this saving clause applies only to taxes due or claimed under chapter 101 of the Laws of 1912, as amended by chapter 116 of the Laws of 1914, which· latter acts imposed a tax of five mills on the dollar on all annual incomes in excess of two thousand five hundred dollars. There is nothing in subsection 2 of section 29 of this Act of 1924 which would warrant us in so limiting the very broad language of this saving clause. It covers any claim, assessment, suit, appeal, right, or cause of action for taxes due prior to the passage of the act, whether such assessment, suit, appeal, or claim therefor shall have been begun before the passage of the act or shall thereafter be begun, and it seems clear that it was the intention of the legislature to fully preserve, by this saving clause, the right to enforce collection of any taxes that accrued under or by virtue of any law repealed or in any wise affected by the passage of the act.

Upon all questions decided in the former opinion, rendered January 19, 1925, each of· the judges adheres to the opinion therein expressed. The suggestion of error will therefore be overruled.

*Overruled.*